IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SENTINEL INSURANCE COMPANY, LTD., ) <br> ) <br> Plaintiff / Counter-Defendant, ) <br> ) <br> v. ) <br> ) <br> YORKTOWN INDUSTRIES, INC., ) <br> ) <br> Defendant / Counter-Plaintiff. ) | Case No. 14-cv-4212 <br><br> Judge Robert M. Dow, Jr. |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Sentinel Insurance Company brings this diversity suit seeking a declaration of its obligations to defend and indemnify Defendant Yorktown Industries against a lawsuit currently pending in California. Before the Court is Plaintiff's motion for summary judgment [41]. For the reasons that follow, the Court grants Plaintiff's motion for summary judgment [41]. The Court will enter a final judgment and close the case.

**I.      Background**

The following facts are drawn primarily from the parties' Local Rule 56.1 statements, [27], [45-2], [45-3], and [47]. This action is an insurance coverage dispute. Plaintiff Sentinel Insurance Company is a Connecticut company that issued an insurance policy to Defendant, which was effective from August 1, 2012 to August 1, 2014. [27, at ¶¶ 1, 15] Defendant Yorktown Industries is an Illinois corporation that sells and distributes office supplies. [*Id.* at ¶ 2.]

The insurance policy provides coverage for claims against Defendant for, among other things, "personal and advertising injury." [*Id.* at ¶ 16; 45-3 at ¶ 8.] "Personal and advertising injury" is defined as: "injury * * * arising out of one or more of the following offenses: * * *

Copying, in your 'advertisement' or on 'your web site,' a person's or organization's 'advertising idea' or style of 'advertisement.'" [27 at ¶ 16; see 45-3 at ¶ 8.] "Advertisement" is defined as "the widespread public dissemination of information or images that has the purpose of inducing the sale of goods, products or services through" radio, television, billboard, magazine, newspaper, the internet, or "[a]ny other publication that is given widespread public distribution." [27 at ¶ 16; see 45-3 at ¶ 8.] "Advertising idea" is defined as "any idea for an 'advertisement.'" [27 at ¶ 16; see 45-3 at ¶ 8.]

The insurance policy also contains an exclusion for "personal and advertising injury"

> 7(a)  Arising out of any actual or alleged infringement or violation of any intellectual property right, such as copyright, patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity; or
> (b)  Any injury or damage alleged in any claim or "suit" that also alleges an infringement or violation of any intellectual property right, whether such allegation of infringement or violation is made by you or by any other party involved in the claim or "suit," regardless of whether this insurance would otherwise apply.

[27 at ¶ 16] ("the Intellectual Property Exclusion").

On November 7, 2013, a business called Imaging Technologies Direct, LLC ("ITD") filed suit against Defendant in the Superior Court of California (the "California Action"). [*Id.* at ¶ 5; Exhibit A (California Action Complaint).] ITD alleges that Defendant hired ITD employees as independent contractors and stole ITD's confidential business information, including ITD's customer list and sales information. [*Id.* at ¶ 6; Exhibit A.] ITD further alleges that Defendant used ITD's confidential business information to contact and solicit ITD customers and to divert sales from ITD to Defendant. [See *id.* at ¶ 8; Exhibit A, ¶¶ 17–25.] Based on these allegations, ITD asserts five cause of action: (1) violation of the Uniform Trade Secrets Act, (2) intentional interference with contractual relations, (3) intentional interference with prospective business advantage, (4) unfair competition, and (5) civil conspiracy. [*Id.* at ¶ 9; Exhibit A.]

2

After the California Action was filed, Defendant demanded that Plaintiff defend and indemnify it under its insurance policies. [*Id.* at ¶ 18.] Plaintiff denied coverage and continues to deny that it owes Defendant any defense or indemnity obligations concerning the claims against Defendant in the California Action. [*Id.* at ¶ 18; 45-3, at ¶ 7.] Thereafter, on June 6, 2014, Plaintiff filed this declaratory judgment action requesting that the Court declare that it owes no insurance coverage to Defendant in connection with the California Action. [1 (Complaint); see also 5 (Amended Complaint).] On December 15, 2014, Defendant filed a three-count Second Amended Counterclaim seeking declarations that Plaintiff has a duty to defend against the California Action and alleging that Plaintiff breached its contractual obligations to defend it in the California Action by denying Plaintiff insurance coverage. [19.] The Court granted Plaintiff's motion to dismiss Count II of Second Amended Counterclaim to the extent that Defendant requested declaratory relief regarding Plaintiff's duty to indemnify Defendant for damages that Defendant may incur in the California lawsuit. [35.] On March 11, 2016, Plaintiff filed a motion for summary judgment, which is currently before the Court. [41.]

## II. Legal Standard

Summary judgment is proper where there is "no dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In evaluating a motion for summary judgment, the Court will construe all facts in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of the nonmoving party. *Bell v. Taylor*, 827

F.3d 699, 704 (7th Cir. 2016). However, "[c]onclusory allegations alone cannot defeat a motion for summary judgment." *Thomas v. Christ Hosp. & Med. Ctr.*, 328 F.3d 890, 892 (7th Cir. 2003).

The parties agree that Illinois law governs this diversity action. "Under Illinois law, the interpretation of an insurance policy is a question of law that is properly decided by way of summary judgment." *Twenhafel v. State Auto Prop. & Cas. Ins. Co.*, 581 F.3d 625, 628 (7th Cir. 2009) (citation and internal quotation marks omitted). To determine whether an insurer has a duty to defend its insured, courts will compare the factual allegations of the underlying complaint, (the complaint in the California Action, in this case), to the language of the insurance policy. *Amerisure Mut. Ins. Co. v. Microplastics, Inc.*, 622 F.3d 806, 810 (7th Cir. 2010). The Court should not "simply look to the particular legal theory pursued by the claimant, but must focus on the allegedly tortious *conduct* on which the lawsuit is based." *Citizens Ins. Co. of Am. v. Uncommon, LLC*, 812 F. Supp. 2d 905, 910 (N.D. Ill. 2011) (quoting *Amerisure*, 622 F.3d at 815–16) (internal quotation marks omitted). If the facts alleged in the complaint fall within, or potentially within, the policy's coverage, the insurer has a duty to defend. *Amerisure*, 622 F.3d at 810. The Court is to construe the policy terms and the allegations in the complaint in favor of the insured, and any doubts and ambiguities are resolved against the insurer. *Id.* at 811. "However, the general rules that favor the insured must yield to the paramount rule of reasonable construction which guides all contract interpretations." *Id.* (citation and internal quotation marks omitted).

## III. Analysis

Plaintiff argues that it is entitled to summary judgment because there are two reasons Defendant's insurance coverage does not apply to the California Action. First, ITD does not

allege "personal and advertising injury" or any other claim that falls within, or potentially within, the insurance policy's cover. Second, the Intellectual Property Exclusion bars coverage for the suit.

As stated above, the insurance policy provides coverage for claims against Defendant for "personal and advertising injury," defined as injury arising out of "[c]opying, in your 'advertisement' or on 'your web site,' a person's or organization's 'advertising idea' or style of 'advertisement.'" [27 at ¶ 16; see 45-3 at ¶ 8.] Defendant argues that it is entitled to insurance coverage for the California Action because ITD alleges that Defendant copied its "advertising idea" by "using ITD's sales statistics and other data in its business in California to contact customers to offer those customers similar products according to the schedule determined by ITD's process." [45, at 4.]

The policy defines an "advertising idea" as "any idea for an 'advertisement.'" [27 at ¶ 16; see 45-3 at ¶ 8.] "Advertisement" is defined as "the widespread public dissemination of information or images that has the purpose of inducing the sale of goods, products or services through" radio, television, billboard, magazine, newspaper, the internet, or "[a]ny other publication that is given widespread public distribution." [27 at ¶ 16; see 45-3 at ¶ 8.] In the California Action, ITD alleges that Defendant stole its customers list and sales information and used the stolen information to contact ITD's customers. Under the plain language of the insurance policy, this does not amount to an allegation that Defendant copied an "advertising idea." ITD does not allege that Defendant used any of ITD's advertising plans, schemes, or designs in contacting customers. See *Liberty Corp. Capital Ltd. v. Security Safe Outlet*, 577 Fed App'x 399, 406 (6th Cir. 2014) (theft of claimant's customer list from former employee to send emails did not constitute an "advertising idea" because there were no allegations that the insured

5

used the claimant's advertising plans or designs in the emails); *State Farm Fire and Cas. Co. v. Steinberg*, 393 F.3d 1226, 1234 (11th Cir. 2004) ("A confidential customer list is a trade secret, not an idea about advertising or an outward expression of a business's style."). Nor does ITD allege that Defendant misappropriated any of ITD's advertising strategies. Cf. *Sentex Systems, Inc. v. Hartford Accident & Indemnity Co.*, 93 F.3d 578, 580 (9th Cir. 1996) (explaining that although the "mere misappropriation of customer mailing lists, standing alone, may not bring a complaint within the scope of possible coverage for" misappropriation of advertising ideas, the lawsuit at issue was broader and involved the misappropriation of advertising strategies, and thus coverage was triggered).

Further, the policy states that a "personal and advertising injury" must arise out of "[c]opying, in your 'advertisement.'" Here, there is no allegation that ITD was injured by Defendant's copying of ITD's customer list or other trade secrets in an "advertisement." ITD does not allege that Defendant publically disseminated ITD's customer list or proprietary business information in order to promote its goods and services or to attract customers. Rather, ITD alleges that Defendant used its customer list to contact customers individually. Without relevant allegations pertaining to an "advertisement," there can be no coverage for a "personal and advertising injury." See *Lemko Corp. v. Fed. Ins. Co.*, 70 F. Supp. 3d 905, 918 (N.D. Ill 2014) (granting partial summary judgment for insurer and holding that where complaint asserted that defendant used proprietary information in its products but did not allege that defendant published the proprietary information to the public, there was no "advertising injury" because there was no infringement in an "advertisement," and thus there was no duty to defend). Therefore, the Court concludes that ITD does not allege "personal and advertising injury" in the California Action and that Plaintiff does not owe Defendant insurance coverage for that lawsuit.

Additionally, even if ITD did allege a "personal of advertising injury" in the California Action, Plaintiff would have no duty to defend or indemnify Defendant under the Intellectual Property Exclusion of the insurance policy. Section 7(a) of the Intellectual Property Exclusion excludes coverage for claims "[a]rising out of any actual or alleged infringement or violation of any intellectual property right, such as copyright, patent, trademark, trade name, *trade secret*, service mark or other designation of origin or authenticity." [27 at ¶ 16 (emphasis added).] Here, Section 7(a) excludes coverage for Defendant because every claim in the California Action is predicated on Defendant's alleged misappropriation of ITD's trade secrets.

Count I (Violation of the Uniform Trade Secrets Act) alleges that Defendant "misappropriated ITD's trade secrets," "used ITD's trade secrets, including, but not limited to, its Customer List, to solicit ITD's clients away from ITD and to [Defendant]." [See 27 at ¶ 10; Exhibit A, ¶¶ 34–35.] Count II (Intentional Interference with Contractual Relations) alleges that Defendant "intentionally interfered with" ITD's client relationships by "misappropriating ITD's trade secrets and proprietary information" and "unfairly soliciting ITD's existing and potential clients." [See *id.* at ¶ 11; Exhibit A, ¶ 40.] Similarly, Count III (Intentional Interference with Prospective Business Advantage) alleges that Defendant interfered with ITD's economic relationships with its existing and potential clients by "misappropriating ITD's trade secrets and proprietary information" and "unfairly soliciting ITD's existing and potential clients." [See *id.* at ¶ 12; Exhibit A, ¶ 48.] Count IV (Unfair Competition) alleges that Defendant offered work to "key ITD employees for the purposes of stealing ITD's Company Information, for the purpose of soliciting and attempting to divert ITD's clients to [Defendant], [and] for the misuse of ITD's trade secrets and confidential and proprietary information[.]" [See *id.* at ¶ 13; Exhibit A, ¶ 56.] Finally, Count V (Civil Conspiracy) alleges that Defendant "knowingly and willfully conspired"

7

to commit wrongful acts, including "misappropriation of ITD's confidential trade secret information, including, but not limited to, ITD's Customer List." [See *id.* at ¶ 14; Exhibit A, ¶ 62.] Since all of the claims in the California Action are premised on the same factual basis—Defendant's alleged misappropriation and misuse of ITD's trade secrets—and none of the claims against Defendant would exist independent of this allegation, coverage is excluded under the Intellectual Property Exclusion. See *Citizens*, 812 F. Supp. 2d at 912–13 (intellectual property exclusion precluded coverage because all of the allegations arose from trademark infringement allegations); *Prolink Holdings Corp. v. Fed. Ins. Co.*, 2011 WL 4901316, at *3 (N.D. Ill. Oct. 14, 2011), aff'd on other grounds, 688 F.3d 828 (7th Cir. 2012) (holding that underlying claims alleging slander based on false assertions of patent ownership were excluded by the intellectual property exclusion).

Further, Section 7(b) of the Intellectual Property Exclusion precludes coverage for "[a]ny injury or damage alleged in any claim or "suit" that also alleges an infringement or violation of any intellectual property right, * * * regardless of whether this insurance would otherwise apply." [27 at ¶ 16 (emphasis added).] Accordingly, even if not every claim in the California Action arose out of an intellectual property violation, coverage would be excluded because at least one claim—Count I, alleging a violation of the Uniform Trade Secrets Act—clearly alleges an excluded intellectual property claim. See *Hartford Cas. Ins. Co. v. Dental USA, Inc.*, 2014 WL 2863164, at *4 (N.D. Ill. June 24, 2014) (because the underlying suit alleged intellectual property infringement, the intellectual property exclusion precluded coverage for the entirety of the lawsuit); *Pinnacle Brokers Ins. Sols. LLC v. Sentinel Ins. Co., Ltd.*, 2015 WL 5159532, at *5 (N.D. Cal. Sept. 2, 2015) (holding that the intellectual property exclusion precluded coverage for the entire suit because the underlying suit alleged that the insured violated the claimant's trade

secrets, and the policy language did not require a connection between the alleged intellectual property violation and another injury alleged in the same suit in order for the intellectual property exclusion to apply).

In arguing that the Intellectual Property Exclusion does not apply, Defendant denies the allegations in ITD's complaint. [45, at 5.] However, this argument fails because under Illinois law, an insurer's duty defend is based primarily upon the plaintiff's allegations against the insured. See *Amerisure*, 622 F.3d at 810; *Scottsdale Ins. Co. v. Walsh Const. Co.*, 2011 WL 4538456, at *7 (N.D. Ill. Sept. 29, 2011) (holding that where the complaint was sufficient to show that there was no duty to defend, the court would not look beyond the complaint to consider defendant's own pleading or testimonial evidence). Therefore, Defendant is not entitled to insurance coverage from Plaintiff in connection with the California Action, and Plaintiff is entitled to summary judgment.

## IV. Conclusion

For the reasons stated above, the Court grants Plaintiff's motion for summary judgment [41]. The Court will enter a final judgment and close the case.

Dated: February 2, 2017

Robert M. Dow, Jr.
United States District Judge